```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MODULAR DEVICES, INC.,
                                        MEMORANDUM & ORDER
                Plaintiff,              08-CV-1441(JS)(WDW)

        -against-

ALCATEL ALENIA SPACE ESPANA
and SPACE SYSTEMS/LORAL, INC.,

                Defendants.
----------------------------------X
APPEARANCES:
For MDI:            Linda U. Margolin, Esq.
                    Jeffrey D. Powell, Esq.
                    Bracken & Margolin, LLP
                    One Suffolk Square, Suite 300
                    1601 Veterans Memorial Highway
                    Islandia, NY 11749

For SS/L:
Alcatel Alenia      Paul G. McCusker, Esq.
Space Espana        McCusker, Anselmi, Rosen & Carvelli, P.C.
                    1325 Sixth Avenue, Suite 2805
                    New York, NY 10019

Space Systems/      Leonard A. Rodes, Esq.
Loral, Inc.         Trachtenberg Rodes & Friedberg LLP
                    545 Fifth Avenue
                    New York, NY 10017
```

SEYBERT, District Judge:

On March 12, 2009, Plaintiff Modular Devices, Inc. ("MDI") brought this action in the Supreme Court of the State of New York, County of Suffolk. MDI alleges breach of contract against Alcatel Alenia Space Espana ("Alcatel") and tortious interference with contract against Space Systems/Loral, Inc. ("SS/L") ("Alcatel" and "SS/L" collectively, "Defendants"). On April 4, 2008, SS/L removed the action to this Court.

Thereafter, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c), which this Court denied. SS/L now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, SS/L's motion for summary judgment is DENIED.

BACKGROUND

SS/L is engaged in the business of manufacturing satellites for commercial and governmental customers. (Def's 56.1 Stmt. ¶ 1, D.E. 43.) During 2005, in connection with contracts to produce two such satellites, SS/L entered into two subcontracts with Alcatel and Mier Communicaciones, S.A ("Mier"), a non-party. (Id. ¶ 2.) Both contracts were for the manufacture of certain "electronic modules" (Compl. ¶¶ 4-5) for ultimate use by SS/L. (Id. ¶ 2.) The contract between SS/L and Mier ("SS/L-Mier contract") stated, in pertinent part:

> [s]eller [i.e., Mier] shall defend, indemnify and hold harmless Buyer [i.e., SS/L] and Buyer's Customer, and their respective affiliates, officers, directors, employees, shareholders and agents, from and against all losses, costs, damages, suits, expenses and liabilities (including, but not limited to, Buyer's reasonable attorneys' fees) arising from or related to the actions or omissions of Seller or its employees, agents and/or Lower Tier Subcontractors [e.g., MDI] in the performance of this Subcontract.

(Id. ¶ 3) (alterations in original). Thereafter, Alcatel and Mier entered into separate subcontracts with MDI for the manufacture of "DC converters." (Id. ¶ 4.) Alcatel and Mier

2

planned to incorporate these converters into the components they agreed to provide to SS/L. (Id.)

Around April 2006, Mier and Alcatel terminated their contracts with MDI. (Def's 56.1 Stmt. Ex. B, D.E. 43.) MDI alleges that, at the time of termination, it had already performed a substantial amount of work under each of the two contracts. (Id.) Thereafter, MDI commenced an action against Mier ("MDI-Mier Action") claiming that Mier wrongfully and unilaterally terminated its contract with MDI. (Id.) MDI also maintained that Mier persuaded Alcatel to terminate its contract with MDI, thereby tortiously interfering with MDI's contractual relationship with Alcatel. (Id.) The action was settled by stipulation on August 2, 2007. (Def's 56.1 Stmt. ¶¶ 8-9.) The 2007 Settlement Agreement ("Settlement Agreement") states that, "[i]t is hereby stipulated and agreed . . . that the above captioned matter be and hereby is dismissed, with prejudice." (Id. ¶ 8.)

In March 2008, MDI brought this suit against SS/L and Alcatel. (Id. ¶ 10.) MDI asserts that Alcatel breached its contract by directing MDI to cease production after MDI had performed a "substantial" portion of the contract. (Compl. ¶ 11, D.E. 1.) MDI also maintains that SS/L knew of Alcatel's contract with MDI and "intentionally procured . . . [Alcatel's] breach." (Id. ¶¶ 22-23.) MDI claims that SS/L gave work that MDI was to

perform under its contract with Alcatel to another vendor chosen by SS/L. (Id. ¶¶ 22-23.) This act by SS/L, and the subsequent cancellation by Alcatel of its contract with MDI, is the basis for MDI's allegation against SS/L for tortious interference. (Id. ¶¶ 24-29.) Consequently, MDI seeks $411,823.00 in compensatory damages. (Id. ¶¶ 13, 29.) Damages include $131,591.10 for the sum allegedly due to MDI for products and services already delivered to Alcatel and $280,231.90 for the cost of work in progress. (Id. ¶ 12.) Around April 24, 2006, Alcatel communicated its "final termination charge" offer of $173,000 to MDI. (Id. ¶¶ 20-21.) MDI rejected the offer. (Id.)

SS/L now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, on the ground that MDI's action against SS/L is barred by the doctrine of res judicata. (Def.'s Mem. Supp. Summ. J. 2, D.E. 43-6.) SS/L argues that MDI's claim against SS/L asserted in this action should have, or could have, been brought against SS/L in the MDI-Mier Action. (Id. at 4.) Therefore, MDI is precluded from bringing its tortious interference claim against SS/L in this action. (Id.) SS/L asserts that the elements of res judicata are satisfied because: (1) the Settlement Agreement between MDI and Mier was an adjudication on the merits, (2) the indemnification provision in SS/L's contract with Mier created a "relationship akin to privity" between SS/L and Mier, and (3) the MDI-Mier Action was

based on the "same factual grouping" as that relied on by MDI in this action. (Id. at 4-11.)

MDI maintains that at the time it arrived at a settlement with Mier, MDI did not have any evidence of SS/L's role as a tortfeasor. (Pl.'s 56.1 Counter-Stmt. ¶¶ 12, 15, D.E. 46-2.) According to MDI, part of the consideration for the Settlement Agreement was Mier's disclosure of evidence revealing the identity of any party that may have induced Mier to breach its contract with MDI. (Id. ¶ 15.) Thus, MDI claims that it was not until after Mier provided MDI with certain documents pursuant to the Settlement Agreement, that MDI had any knowledge of SS/L's tortious conduct. (Id. ¶ 14.)

## DISCUSSION

I. Standard of Review

    A. Federal Rule of Civil Procedure 56: Summary Judgment

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 213 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134

(2d Cir. 1997). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 258, 106 S. Ct. at 2515, L. Ed. 2d at 218. "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

  B. Local Civil Rule 56.1: Statements of Material Facts on Motion for Summary Judgment

Pursuant to Local Rule 56.1, the party moving for summary judgment must provide "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." LOCAL R. 56.1(a). Similarly, the non-moving party is

6

required respond to "each numbered paragraph in the statement of the moving party, and if necessary, [include] additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." LOCAL R. 56.1(b). "Each numbered paragraph . . . [provided] by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by . . . the opposing party." LOCAL R. 56.1(c). Additionally, "each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." LOCAL R. 56.1(d).

II. The Doctrine of Res Judicata

A. Claim Preclusion Standard

Under the doctrine of res judicata, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S. Ct. 2424, 2427, 69 L. Ed. 2d 103, 108 (1981)). For res judicata to preclude later litigation, a court must find that (1) a court of

7

competent jurisdiction rendered (2) a prior final judgment on the merits, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action. EDP Med. Computer Sys. v. United States, 480 F.3d 621, 624 (2d Cir. 2007). Because the parties do not dispute the first element, the Court here examines only the last three.

    B.    Claim Preclusion in this Case

        1.    Settlement Agreement was an Adjudication on the Merits

SS/L argues that under the doctrine of res judicata, the Settlement Agreement between MDI and Mier precludes MDI from bringing this action. (Def.'s Mem. Supp. Summ. J. 4, D.E. 43-6.) SS/L correctly asserts that the Settlement Agreement was an adjudication on the merits. Harris v. Beth Isr. Med. Ctr., No. 09-CV-1416, 2010 U.S. App. LEXIS 3496, at *3 (2d Cir. Feb. 22, 2010) ("[A] stipulation to discontinue an action with prejudice is accorded the same res judicata effect as a judgment on the merits."); see also Cahill v. Arthur Andersen & Co., 659 F. Supp. 1115, 1120 (S.D.N.Y. 1986), aff'd, 822 F.2d 14 (2d Cir. 1987) ("A dismissal with prejudice constitutes a judgment on the merits just as fully and completely as if the order had been entered after trial[;] . . . a decree of settlement . . . will be given full res judicata effect in a subsequent suit between the same parties on the same causes of action as those compromised in the settlement.") The Settlement Agreement stated that "the . . .

. matter be and hereby is dismissed, with prejudice." (Def's 56.1 Stmt. Ex. E., D.E. 43-5) Thus, it was a final judgment on the merits, and satisfies the first prong of the test.

   2. <u>Privity</u>

SS/L also claims that the indemnification relationship created by SS/L and Mier's subcontract (Def.'s 56.1 Stmt. Ex. A at 18), established the requisite privity between SS/L and Mier for <u>res judicata</u> purposes. (Def.'s Mem. Supp. Summ. J. 7, D.E. 43-6.) The "principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original plaintiff to justify preclusion." <u>Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.</u>, 56 F.3d 359, 367-68 (2d Cir. 1995). A relationship of privity "includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action." <u>Ferris v. Cuevas</u>, 118 F.3d 122, 126 (2d Cir. 1997) (quoting <u>Watts v. Swiss Bank Corp.</u>, 265 N.E.2d 739, 743, 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 320 (1970)).

Here, SS/L neither claims a successor relationship to a property interest with Mier, nor claims that SS/L had control of the prior MDI-Mier Action. Thus, this Court looks to whether SS/L's interests were represented by Mier in the prior action.

New York has adopted the Restatement of Judgments' criteria for privity, which provides as follows:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has . . . preclusive effects against the injured person in a subsequent action against the other.

Restatement (Second) of Judgments § 51 (1980). Federal courts have interpreted New York's res judicata rules to find that under certain circumstances, "privity exists between parties in an indemnification relationship." Garver v. Brown & Co. Secs. Corp., No. 96-CV-2507, 1998 U.S. Dist. LEXIS 1454, at *15 (S.D.N.Y. Feb. 6, 1998) (internal quotation marks omitted). If Mier is obligated to indemnify SS/L for any loss SS/L may suffer in the instant case, then the indemnification relationship between Mier and SS/L satisfies the third prong of the test.

As a general matter, when interpreting and enforcing contracts, New York courts give effect to all contractual provisions unless they offend public policy. See Metro. Life Ins. Co. v. Noble Lowndes Int'l, 643 N.E.2d 504, 509, 84 N.Y.2d 430, 439, 618 N.Y.S.2d 882, 887 (1994). The indemnification provision in the SS/L-Mier contract provided that Mier would indemnify SS/L for any "losses, costs, damages, suits, expenses and liabilities . . . arising form or related to the actions or omissions of [Mier] . . . in the performance of [the] Subcontract

10

[with SS/L]." (Def.'s 56.1 Stmt. Ex. A at 18.) Nonetheless, the New York Court of Appeals has held that, indemnification agreements are unenforceable as violative of public policy to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury. St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 86 (2d Cir. 2005) (citing Austro v. Niagara Mohawk Power Corp., 487 N.E.2d 267, 267, 66 N.Y.2d 674, 676, 496 N.Y.S.2d 410, 410 (1985)); see also Bank of N.Y. v. Neumann, 628 N.Y.S.2d 675, 676 (App. Div. 1995) ("[P]ublic policy does not permit indemnification for damages flowing from the intentional causation of injury."). Accordingly, the Court looks to whether tortious interference with a contractual relationship is an intentional tort, and, therefore, not recoverable under the indemnification provision of the SS/L-Mier contract.

Under New York law, tortious interference is an intentional tort. Tortious interference with a contractual relationship requires: "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's <u>intentional</u> procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1375, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 81 (1996)

11

(emphasis added); see also NBT Bancorp v. Fleet/Norstar Fin. Group, 664 N.E.2d 492, 496, 87 N.Y.2d 614, 621, 641 N.Y.S.2d 581, 585 (1996); Jones v. City Sch. Dist. of New Rochelle, No. 08-CV-1148, 2010 U.S. Dist. LEXIS 26265, at *24 (S.D.N.Y. Mar. 19, 2010). Thus, even if MDI had initially brought a suit against SS/L for tortious interference, and SS/L lost the suit and suffered damages as a result, SS/L would be barred from seeking indemnification from Mier because it is against public policy. See Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 724 N.Y.S.2d 107, 112 (App. Div. 2001) (stating that insurance coverage for acts amounting to intentional interference is precluded by public policy).

Therefore, SS/L and Mier's indemnification relationship, from which SS/L claims privity, is not of the character required by the doctrine of res judicata, and does not bar MDI's claim against SS/L. According to New York public policy, Mier was neither contractually obligated to indemnify SS/L, nor "vicariously responsible for the conduct of" SS/L with respect to its intentional torts. Consequently, the Court finds that SS/L fails to establish the third prong of the test, and MDI's action is not barred by res judicata.

### 3. Same Cause of Action

Even if SS/L could establish privity, its argument in favor of barring MDI's claims using res judicata still fails.

The doctrine of res judicata states that once a judgment on the merits has been entered, subsequent litigation by the same parties or those in privity with them is barred if it concerns "the [same] transaction, or series of connected transactions, out of which the [first] action arose." Maharaj v. BankAmerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) (quoting Restatement (Second) of Judgments § 24(1) (1982)). But the fact that "the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." Maharaj, 128 F.3d at 97. In order for the second action to involve the same transaction as the first, the second action must require the same evidence to support it based on facts that were also present in the first action. Id.

SS/L correctly relies on Woods v. Dunlop Tire Corp., 972 F.2d 36, 39 (2d Cir. 1992) for the proposition that, "when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata." But, application of this principle to the undisputed facts does not demonstrate that the MDI-Mier Action was based on the same cause of action as this suit. It is undisputed that Mier held separate contracts with SS/L and MDI. (Def.'s 56.1 Stmt. ¶¶ 2, 6, D.E. 43.) It is also undisputed that in the prior action, MDI asserted two claims

against Mier: (1) breach of contract, and (2) tortious interference with MDI's contractual relationship with Alcatel. (Def.'s 56.1 Stmt. ¶ 6, D.E. 43.) What <u>is</u> disputed, however, is whether, at the time MDI brought the prior action against Mier, MDI <u>knew</u> of any facts from which it could allege that SS/L tortiously interfered with MDI's contract with Alcatel. MDI contends that it did not know that SS/L was responsible for inducing Mier to breach its contract with MDI until after the Settlement Agreement with Mier. (Pl.'s 56.1 Stmt. ¶ 14, D.E. 46-2.) MDI alleges that it was only after Mier produced documents to MDI, pursuant to the Settlement Agreement, that SS/L's role as a tortfeasor was revealed. (<u>Id.</u>) Therefore, this action does not rely on the same evidence, based on facts that were also present in the first action, to support it. <u>Maharaj</u>, 128 F.3d at 97. And, it does not stem from the same cause of action as the MDI-Mier Action. Accordingly, SS/L also fails the fourth prong of the test.

The fact that MDI chose to sue Mier in the first action, and then sue SS/L in this action, is not detrimental to MDI's case even if both actions <u>were</u> based on the same transaction. "When a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties." <u>N. Assur. Co. of Am. v. Square D.</u>

Co., 201 F.3d 84, 89 (2d Cir. 2000) (quoting Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367 (2d Cir. 1995)) (alteration omitted); see also White v. Kelsey, 935 F.2d 968, 970 (8th Cir. 1991) ("A claim is not terminated against one person who may be liable for a loss by a judgment against another person liable for the loss.").

## CONCLUSION

For the foregoing reasons, SS/L's motion for summary judgment is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August _12_, 2010
       Central Islip, New York